IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ROBERT L. DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.  12-3003 |
| | ) |
| MICHAEL FARMER, RAY WILLIS, | ) |
| MICHAEL McAFEE, and | ) |
| CAPITAL TOWNSHIP ASSESSOR, | ) |
| | ) |
| Defendants. | ) |

OPINION
==

SUE E. MYERSCOUGH, United States District Judge.

This cause is before the Court on Defendant Capital Township Assessor's Combined Motion to Dismiss (d/e 15).  For the reasons that follow, the Motion is GRANTED.

I.  FACTS

On January 3, 2012, Plaintiff Robert L. Davis filed a pro se Complaint on a pre-printed form.  Plaintiff does not identify a particular cause of action but marked the box labeled "Unknown."

Plaintiff named as Defendants the following individuals: Michael J.

Farmer, Director of the Springfield Office of Planning and Economic Development (OPED); Capital Township Assessor; and two employees of the United States Department of Housing and Urban Development (HUD) located in Chicago, Ray Willis and Michael McAfee. Defendant Farmer has filed an Answer to the Complaint. Defendants Willis and McAfee have not yet been served.

The "Statement of Claim" portion of Plaintiff's Complaint, written in a narrative form, provides the following information.

Plaintiff alleges that OPED had a program to assist individuals with fixing their homes. The program cost Plaintiff $1,081.48 instead of $392.76. Plaintiff was also harassed "all through this program."

Defendant Farmer and Mayor Timothy Davlin sent a letter "saying the county tax assessor['s] office made the error c[a]using [Plaintiff's] taxes to double, which [Plaintiff] paid." However, the Assessor's Office thereafter sent Plaintiff a letter indicating that the permit issued by OPED was "a certificate of error [sic] the value should not have been changed."

Rebecca Jannesse of OPED had Zelle Title Company do a title search, which located a lien of $55,966.43. Zelle Title Company told Plaintiff that the lien could be removed for $225. Plaintiff had to go to the mayor's office to have the lien removed. The mayor's office told Plaintiff that Zelle Title Company made a mistake.

OPED called Plaintiff's employer to see if he worked there. Plaintiff lost his job at Wal Mart, and Plaintiff filed a complaint against Wal Mart with the Illinois Department of Human Rights. Plaintiff had a meeting with Wal-Mart during which "Wal Mart stated they [were] harassed by [OPED] and it sent up red flags." Plaintiff was fired.

The mayor's office sent a lawyer to help Plaintiff in court. The attorney, Ryan McCrady, reset the court date. On the new court date, attorney McCrady said he could not help Plaintiff because he represented the City of Springfield. The judge told Plaintiff that Plaintiff was "don[e] wrong" and that Plaintiff needed a lawyer.

The work on Plaintiff's house was "done bad." Plaintiff also received a building and zoning ticket for $250. Plaintiff alleged his "yard

was the clean[e]st in the community" and that "this is another way to make me pay money."

OPED sent Plaintiff a letter on March 10, 2010 indicating that Plaintiff did not have to pay back any money from the program. Joe Davis bought Plaintiff's home at 2001 East Adams. Plaintiff alleges that Davis was "in with" Q5, which worked with the Greater Springfield Chamber of Commerce, OPED, the County Tax Assessor's office, and the Springfield mayor's office to help Joe Davis "get [Plaintiff's] home." Plaintiff also alleged that Q5 wanted Plaintiff to pay money when the program was supposed to be free. Plaintiff further alleged that people in Q5 received money to buy homes to fix, build homes, and help with business more than once "because most of them had money." Plaintiff alleges: "This is Federal Government money[. ] This is not right."

Plaintiff further alleges that Defendants Willis and McAfee, of the Chicago HUD office, did not help Plaintiff. Plaintiff wrote to the HUD office in Washington, D.C. because he was threatened by Defendant McAfee, who said he would "bust me in the chops if he ever see me" and

told Plaintiff not to call the office again.

On August 10, 2011, the mayor's office sent Plaintiff a letter stating the City of Springfield could not be held liable. Plaintiff alleges he was talking to the last mayor's office who said the same thing but that mayor stole money, was losing his home, and was a crook.

Plaintiff alleges he remains homeless. Plaintiff seeks $500,000, a home, and a business.

Plaintiff also attaches several documents to his Complaint, including the following:

(1) A portion of a December 31, 2011 letter from Zelle Title Company to the Illinois Attorney General's office indicating that the office performed a letter search on Plaintiff's property and reported that a tax lien had been filed against Plaintiff for over $55,000. The letter further provides that based on calls to OPED and the Department of Revenue, Zelle Title Company determined they could clear the report based on an affidavit from Plaintiff but Plaintiff did not sign an affidavit.

(2) A letter dated September 23, 2009 from Jannesse, the Community Program Specialist at OPED, to Plaintiff enclosing a copy of the recorded Mortgage and Release of Mortgage.  The letter further provides that several years earlier, OPED rehabilitated the property (2001 E. Adams Street) and placed a lien against the property.  Because five years had passed, the loan had been forgiven.

(3) A "Display Complaint Detail" dated May 9, 2006 showing before and after land and building values.  The document also notes: ""THE BUILDING PERMITS ISSUED BY ECONOMIC DEVELOPMENT IN 2004 HAVE NOT BEEN COMPLETED, THEREFORE, THE VALUE SHOULD NOT HAVE BEEN CHANGED IN 2005.  WE WILL REVIEW THE SUBJECT PROPERTY IN 2006."

(4) A letter dated April 22, 2008 to Congressman Phil Hare from Chet Schneider, Operations Coordinator of OPED, responding to an inquiry regarding Plaintiff's claim regarding the taxes on his

property (2001 E. Adams).  The letter provides that the City could find no fault through its offices for the increase of Plaintiff's property taxes.  OPED did not apply for the building permits directly.  The contractor was responsible for obtaining the permit.  Through research, OPED concluded that the County Tax Assessor's office assessed the property incorrectly, causing Plaintiff's property tax to double for the year of 2005.  After Plaintiff disputed the increase, the County issued a check to Plaintiff's mortgage company for the difference of the error.  The check was returned due to the closure of the mortgage company.  It was OPED's understanding that the new lender would not accept the money from the County and no mutual agreement could be reached for a loan modification between Plaintiff and the new lender.

(5) A May 27, 2008 letter from Thomas K. Cavanagh, Sangamon County Treasurer, to Congressman Phil Hare.  The letter provides that Plaintiff's 2005 property taxes were paid by Mortgage Lenders Network, USA, Inc.  An assessment error resulted in a refund of

$318.66.  The refund was requested by the lender, who had paid the tax bill.  The County Treasurer issued the refund and the lender cashed the check.  The letter further provides that Plaintiff advised Assistant Treasurer Mark Crawford that the refund went to cover late fees.  Cavanagh believed that the matter was between the lender and Plaintiff.  Cavanagh further believed that the lender was now defunct.

On March 8, 2012, Defendant Capital Township Assessor filed its Combined Motion to Dismiss.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  For purposes of the motion, a court must accept as true all well-pleaded allegations contained in the complaint and draw all inferences in the light most favorable to the non-moving party.  <u>Estate of Davis v. Wells Fargo Bank</u>, 633 F.3d 529, 533 (7th Cir. 2011).  To avoid dismissal for failure to state a claim, the

complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis. Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). This means that (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." EEOC v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007). Conclusory allegations are "not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009) (citing Twombly, 550 U.S. at 544-55).

This Court further notes that "pro se litigants are held to a lesser pleading standard than other parties." Federal Exp. Corp. v. Holowecki, 552 U.S. 389, 402 (2008); see also McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010) (noting that the district court must construe a pro se

complaint liberally).

## III.  ANALYSIS

Reading between the lines, this Court interprets Plaintiff's Complaint as alleging that a mistake was made that increased his tax assessment and that he paid more for a program through OPED than he was supposed to pay.  It also appears that Plaintiff's mortgage lender foreclosed on Plaintiff's property, causing him to lose his home.

Defendant Capital Township Assessor moves to dismiss the Complaint because the Complaint contains no factual details describing any acts of Defendant Capital Township Assessor that give rise to a cause of action in this Court.  Alternatively, Defendant Capital Township Assessor requests Plaintiff provide a more definite statement under Rule 12(e) because the Complaint does not plead facts alleging Plaintiff was harmed by the acts of Defendant Capital Township Assessor and the Complaint does not establish the jurisdiction of the Court.

Plaintiff has responded, stating that he paid more on his taxes because of mistakes made by the tax assessor's office and OPED.

In his Complaint, Plaintiff alleges that the County Tax Assessor helped Joe Davis get Plaintiff's home. It is unclear whether Plaintiff intended to refer to Defendant Capital Township Assessor. In any event, the nature of the alleged misconduct in helping Joe Davis obtain Plaintiff's home is unclear. The Court cannot determine Plaintiff's claim against Capital Township Assessor in this allegation.

Plaintiff also complains of the increased tax assessment, for which he blames, in part, Defendant Capital Township Assessor. Plaintiff alleges he paid the increased tax, but the documents attached to the Complaint suggest the mortgage lender paid the tax. See Massey v. Merrill Lynch & Co., Inc., 464 F.3d 642, 645 (7th Cir. 2006) (where the exhibits conflict with the allegations of the complaint, the exhibits generally control). Moreover, the documents attached to the Complaint also suggest that the overcharge was refunded to the mortgage lender. Again, the Court cannot determine Plaintiff's claim against Defendant Capital Township Assessor.

Although not raised by Capital Township Assessor, and therefore

not decided by this Court, the Court nonetheless notes that the Tax Injunction Act[1] (28 U.S.C. § 1341) and principles of comity often prevent federal courts from addressing claims that challenge state tax systems. See Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 166 (1981); see also Rosewell v. LaSalle National Bank, 450 U.S. 503, 528 (1981) (applying the Tax Injunction Act to suit against county treasurer and county tax assessor).

In McNary, 454 U.S. 100, 166 (1981), the United States Supreme Court held that "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts." That is, so long as the state provides remedies that are "plain, adequate, and complete," the taxpayer must seek state remedies and then seek review of the state decision from the United States Supreme Court. Id. The Seventh Circuit has found that the "Illinois tax system passes muster under McNary." Heyde v. Pittenger, 633 F.3d 512,

---

[1] "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. See also Wright v. Pappas, 256 F.3d 635, 636 (7th Cir. 2001) (noting that the Tax Injunction Act has been applied to bar actions for injunctive relief, declaratory relief, and suits for refunds of state taxes).

521 (7th Cir. 2011) (affirming the district court's finding that the taxpayer's claim against the county assessor was barred by the principle of comity); see also Wright v. Pappas, 256 F.3d 635, 637-38 (7th Cir. 2001) (examining the Tax Injunction Act and principles of comity and finding that because the plaintiff "is contesting the collection of a tax and seeking in effect a tax refund, . . . his suit is therefore barred").

Because Plaintiff's allegations against Capital Township Assessor are not entirely clear and his pro se Complaint must be liberally construed, this Court will grant the Motion to Dismiss without prejudice. Plaintiff may seek leave to file an Amended Complaint against Capital Township Assessor, setting forth the claim or claims he intends to bring against Capital Township Assessor, who shall be granted time to respond to the Motion for Leave to Amend.

## IV. CONCLUSION

Defendant Capital Township Assessor's Combined Motion to Dismiss (d/e 15) is GRANTED. The Complaint against Capital

Township Assessor is DISMISSED WITHOUT PREJUDICE.  Plaintiff may file, by April 30, 2012, a Motion for Leave to File Amended Complaint setting forth the claim Plaintiff intends to bring against Defendant Capital Township Assessor.  Defendant Capital Township Assessor shall respond to such motion on or before May 14, 2012.

ENTER: April 9, 2012

FOR THE COURT:

                                                      s/Sue E. Myerscough
                                                  SUE E. MYERSCOUGH
                                    UNITED STATES DISTRICT JUDGE