IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ROBERT L. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  12-3003 |
| | ) | |
| CITY OF SPRINGFIELD and | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

SUE E. MYERSCOUGH, United States District Judge.

This cause is before the Court on Defendant City of Springfield's Motion to Dismiss Complaint (d/e 42).  Because Plaintiff's federal and state claims accrued long before Plaintiff filed suit, the claims are barred by the statute of limitations.  Therefore, the Motion to Dismiss is GRANTED.

## I.  FACTS ALLEGED AGAINST DEFENDANT CITY OF SPRINGFIELD

Plaintiff Robert L. Davis filed this lawsuit <u>pro se</u> on January 3, 2012.  Because Plaintiff is proceeding <u>pro se</u>, the Court liberally

construes the facts.  See McGowan v. Hulick, 612 F.3d 636, 640 (7th

Cir. 2010) (noting that the district court must construe a pro se

complaint liberally).  The following facts are taken from Plaintiff's

various pleadings rather than focusing solely on Plaintiff's Second

Amended Complaint (d/e 35) and Attachments (d/e 36).

Around 2004, Plaintiff began participating in a program through

the City of Springfield Office of Planning and Economic Development

(OPED) that received federal funding.  Under the program, Plaintiff's

property would be rehabilitated at no cost to Plaintiff if he stayed in the

home for five years.  A letter dated September 23, 2009 from OPED to

Plaintiff indicates that because five years had passed, the lien on

Plaintiff's property from the rehabilitation of the property by OPED was

removed and the loan had been forgiven.  See Compl., d/e 1, p. 11.

Plaintiff alleged in his original Complaint that he was harassed "all

through this program."  Compl., d/e 1.  Plaintiff specifically complains of

the following harassment: (1) the increase in his property taxes, (2) the

loss of his employment, and (3) a $55,000 lien on Plaintiff's property

that he had to pay $225.00 to have removed.

First, Plaintiff claims that due to mistakes by the City of Springfield and the Tax Assessor's Office[1], the property taxes on his property for 2005 (assessed in 2006) doubled. A May 9, 2006 document in the record indicates that, because the building permits issued by OPED in 2004 had not been completed, the value of Plaintiff's home should not have been increased in 2005. See Display Complaint Detail (Attachment to Sec. Am. Compl. d/e 36, p. 6). Plaintiff disputed the tax increase and, in February 2007, a refund was issued to Plaintiff's mortgage lender. See, e.g., April 22, 2008 Letter from OPED to Congressman Phil Hare (Attachment to Sec. Am. Compl., d/e 36, p. 9); February 2007 check in the amount of $318.66 (Attachment to Sec. Am. Compl., d/e 36, p. 3); and Sangamon County Real Estate Tax Bill (Attachment to Sec. Am. Compl., d/e 36, p. 5).

Nonetheless, Plaintiff alleges the tax increase caused him to lose his

---

[1] Plaintiff's claims against Capitol Township Assessor were dismissed in May 2012. See d/e 21, May 2, 2012 Text Order. Plaintiff also has a claim pending against the United States.

home through foreclosure.  Specifically, the error caused Plaintiff's mortgage payment to increase because his taxes were escrowed.  See Pl. Mem. (d/e 26) ("I the Plaintiff payed [$]1.081.48 on taxes to my mortgage company the way I the plaintiff payed was [$]609.44 dollars a month I the Plaintiff had a fixed mortgage of [$]441.41 but after the mistake I had to pay more money for the mistake"); Sec. Am. Compl. (d/e 35) (alleging that his taxes went up, which caused his monthly payment to increase); Attachment to Sec. Am. Compl. (d/e 36, p. 4) (portion of a document from Plaintiff's mortgage lender showing the amount in taxes paid, escrow advances paid, and principle paid that month).  Plaintiff alleges that OPED made the mistakes because Plaintiff is black and OPED had a racially discriminatory motive.  See Sec. Am. Compl. (d/e 35).

Second, Plaintiff alleges the City of Springfield caused him to lose his job at Wal-Mart in December 2004.  Plaintiff alleged that Becky Jannesse of OPED called and harassed Wal-Mart, apparently by repeatedly asking for employment verification, which caused Wal-Mart to fire Plaintiff.

Sec. Am. Compl. (d/e 35).

Third, Plaintiff alleges that OPED hired Zelle Title Company to perform a title search on his property.  According to Plaintiff, Zelle Title Company reported a lien of $55,966.43 and Plaintiff had to pay $225 to have the lien removed.  Sec. Am. Compl. (d/e 35).  These allegations are supported by an August 26, 2003 letter from Zelle Title Company to Rebecca Jannesse of OPED which indicated that a search found several encumbrances on Plaintiff's property, including a Notice of Lien against Plaintiff in the amount of $55,966.43.  Attachment (d/e 36, p. 2); see also December 31, 2003 letter from Zelle Title Company to the Illinois Attorney General (Compl., d/e 1, p. 10) (stating that Plaintiff had reported he was not the individual in the Notice of Lien and Zelle Title Company ultimately determined that Zelle could clear the report with an affidavit from Plaintiff).

On August 20, 2012, this Court held a hearing.  The Court construed Plaintiff's claims against the City of Springfield as claims pursuant to § 1983, § 1981, and Title VI, as well as a supplemental state

law claim for tortious interference with employment.  Because Plaintiff

sought to sue Michael Farmer, the Director of OPED, only in his official

capacity, the Court found the claim against Farmer was duplicative of the

suit against the City.  The City was granted leave to file a Motion to

Dismiss.  <u>See</u> Attachment to Sec. Am. Compl. (d/e 36, p. 2).

On September 19, 2012, the City filed its Motion to Dismiss.  The

City asserts the Second Amended Complaint fails to state a claim.  The

City also asserts that the claims are barred by the statute of limitations.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule Civil Procedure 12(b)(6)

permits dismissal of a complaint for "failure to state a claim upon which

relief can be granted."  Fed.R.Civ.P. 12(b)(6).  For purposes of the

motion, a court must accept as true all well-pleaded allegations contained

in the complaint and draw all inferences in the light most favorable to the

non-moving party.  <u>Estate of Davis v. Wells Fargo Bank</u>, 633 F.3d 529,

533 (7th Cir. 2011).  To avoid dismissal for failure to state a claim, the

complaint must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).  That

statement must be sufficient to provide the defendant with "fair notice"

of the claim and its basis.  Tamayo v. Blagojevich, 526 F.3d 1074, 1083

(7th Cir. 2008); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

(2007).  This means that (1) "the complaint must describe the claim in

sufficient detail to give the defendant 'fair notice of what the . . . claim is

and the grounds upon which it rests" and (2) its allegations must

plausibly suggest that the plaintiff has a right to relief, raising that

possibility above a "speculative level."  EEOC v. Concentra Health

Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007).  Conclusory allegations

are "not entitled to be assumed true."  Ashcroft v. Iqbal, 556 U.S. 662,

129 S. Ct. 1937, 1951 (2009) (citing Twombly, 550 U.S. at 544-55).

Generally, the running of the statute of limitations is an affirmative

defense.  Rylewicz v. Beaton Serv., Ltd., 698 F.Supp. 1391, 1398 (N.D.

Ill. 1988), aff'd 888 F.2d 1175 (7th Cir. 1989).  "[C]omplaints do not

have to anticipate affirmative defenses to survive a motion to dismiss."

United States v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005);  Hollander v.

Brown, 457 F.3d 688, 691 n.1 (2006) ("a federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense").  A plaintiff may, however, plead itself out of court by "alleging facts that are sufficient to establish the defense." Hollander, 457 F.3d at 691 n.1.

## III.  ANALYSIS

One of the grounds on which the City has moved to dismiss the Amended Complaint is the statute of limitations.  This case involves three federal causes of action–§ 1983, § 1981, and Title VI–which do not contain a statute of limitations in the statutes themselves.  When a federal cause of action does not contain a statute of limitations, courts generally "adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."  Wilson v. Garcia, 471 U.S. 261, 266-68 (1985) (noting that the federal court should select the most appropriate and most analogous state statute of limitations), superceded by statute on other grounds, 28 U.S.C. § 1658, as recognized in Jones v. Donnelley & Sons Co., 541 U.S. 369, 377-380 (2004); see

also 42 U.S.C. § 1988; <u>Owens v. Okure</u>, 488 U.S. 235, 239 (1989) ("§ 1988 endorses the borrowing of state-law limitations provisions where doing so is consistent with federal law"); <u>Simmons v. Gillespie</u>, 2012 WL 1710607, at *2 (C.D. Ill. 2012) (noting that in § 1983 and §1985 suits, the court borrows the "statute of limitations from the law of the state in which the district court sits").

In 1991, Congress enacted 28 U.S.C. § 1658, which provides for a four-year statute of limitations for civil actions arising under an act of Congress. However, § 1658 only applies to actions arising under federal statutes enacted after December 1, 1990. 28 U.S.C. § 1658(a).

Additionally, even when a court applies a state statute of limitations to a federal claim, federal law determines when the claim accrues. <u>Hondo, Inc. v. Sterling</u>, 21 F.3d 775, 778 (7th Cir. 1994). Under federal law, a cause of action accrues when a plaintiff knows or has reason to know of the injury. <u>Brademas v. Indiana Housing Finance Auth.</u>, 354 F.3d 681, 685 (7th Cir. 2004); <u>Wilson v. Giesen</u>, 956 F.2d 738, 740 (7th Cir. 1992) (""Civil rights claims . . . accrue when the

plaintiff knows or should now that his or her constitutional rights have

been violated").

With these general principles in mind, the Court will examine each

of the causes of actions in question.

A.    Plaintiff's § 1983 Claim is Barred by the Statute of Limitations

Section 1 of the Civil Rights Act of 1871, codified as 42 U.S.C. §

1983, provides as follows:

> Every person who, under color of [law] ... subjects,
> or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983.  The statute of limitations for § 1983 actions filed in

Illinois is two years.  Wilson, 471 U.S. at 280 (holding that "§ 1983

claims are best characterized as personal injury actions" and that the

state's statute of limitations for personal injuries should apply); see also

Henderson v. Bolanda, 253 F.3d 928, 931 (7th Cir. 2001) (noting that

for § 1983 actions, the court adopts the state's limitations period for

personal injury claims), citing 735 ILCS 5/13-202 (two-year statute of limitations for personal injury claims).

Plaintiff filed suit on January 3, 2012. Plaintiff has not identified any conduct by the City of Springfield that occurred on or after January 3, 2010 (two years prior to the date of filing) that allegedly violated his constitutional rights. Plaintiff generally complains about his treatment in the OPED program, but he completed that program in September 2009, as evidenced by the letter reflecting that the loan was forgiven. The alleged mistake regarding Plaintiff's property taxes occurred in 2005 through 2007, when the money was refunded. Plaintiff lost his job in 2004. The alleged mistake regarding the $55,000 lien occurred in 2003 and 2004. Therefore, this Court finds that Plaintiff's § 1983 claim is barred by the statute of limitations.

B.   Plaintiff's § 1981 Claim is Barred by the Statute of Limitations

Section 1 of the Civil Rights Act of 1866[2], codified at 42 U.S.C. §

---

[2] Section 1981 was "amended in minor respects in 1870 and recodified in 1874 [citation] but its basic coverage did not change prior to 1991." Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369, 372 (2004)

1981, provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  To prevail under § 1981, "a plaintiff must establish (1) he is a member of a racial minority; (2) the defendants intended to discriminate against him on the basis of race; and (3) the discrimination deprived him of one or more rights enumerated in § 1981."  Lewis v. Schmidt, 2012 WL 2396424, at *4 (N.D. Ill. 2012).

Section 1981 originally protected only the right to "make and enforce contracts."  See Patterson v. McLean Credit Union, 491 U.S. 164, 176 (1989) (holding that § 1981 did not extend to harassing conduct that occurred after the contractual relationship has been established).  The statute of limitations for such a claim is the statute of limitations governing personal injury actions in the state where the action

is pending.  See Goodman v. Lukens Steel Co., 482 U.S. 656, 661

(1987) (rejecting the argument that the applicable statute of limitations

for a § 1981 claim should be the state law statute of limitations

pertaining to suits for interference with contractual rights; finding instead

that § 1981 is"part of a federal law barring racial discrimination, which . .

. is a fundamental injury to the individual rights of a person" and that the

state's personal injury statute of limitations applies), superceded by

statute on other grounds, 28 U.S.C. § 1658, as recognized in Jones, 541

U.S. at 377-380.

In 1991, Congress amended § 1981 to define "make and enforce

contracts" to include post-formation conduct.  See 42 U.S.C. § 1981(b)

("defining "make and enforce contracts" to include "the making,

performance, modification, and termination of contracts, and the

enjoyment of all benefits, privileges, terms, and conditions of the

contractual relationship); Jones v. R.R. Donnelly & Sons Co., 541 U.S.

369, 383 (2004) (noting that in 1991, and in response to Patterson,

Congress amended § 1981).  After the amendment, individuals could sue

under § 1981 for harassing conduct that occurred after the formation of the contract.  <u>Jones</u>, 541 U.S. at 371.

As noted above, Congress enacted, in 1991, a four year statute of limitations which applies only to causes of action "arising under an Act of Congress enacted after the date of the enactment of this section."  28 U.S.C. § 1658 (enacted December 1, 1990).  In <u>Jones</u>, the United States Supreme Court held that causes of action that allege violations of § 1981 as amended in 1991 are governed by the four-year statute of limitations contained in § 1658 because the cause of action arose under an act of Congress enacted after December 1, 1990.  <u>Jones</u>, 541 U.S. at 383. Therefore, § 1981 has two statutes of limitations: a two -year statute of limitations for § 1981 claims which involve the making or enforcement of contracts and a four-year statute of limitations for § 1981 claims that involve harassing conduct that occurred after the formation of the contract.  <u>See Dandy v. United Parcel Serv., Inc.</u>, 388 F.3d 263, 269 n. 4 (7th Cir. 2004).

In this case, Plaintiff is asserting a claim based on the portion of §

1981 as amended in 1991, which relates to the prohibition of harassing conduct that occurred after the formation of the contract.  Therefore, the statute of limitations for Plaintiff's § 1981 claim is four years.  Jones, 541 U.S. at 383-84 (finding that a claim brought under the amended portion of § 1981 was subject to the four-year statute of limitations in § 1658).

Plaintiff was involved in the OPED program between 2004 and 2009, when he was told the loan was forgiven.  Plaintiff alleges he was harassed all throughout the program but only alleges the three discrete incidents noted above: (1) the mistakes regarding his taxes in 2005 and 2006 and the refund in 2007; (2) the loss of his employment in December 2004; and (3) the mistaken $55,000 lien on his property in 2003 and 2004.  With a four-year statute of limitations, Plaintiff would have to point to some conduct of intentional discrimination that occurred on or after January 3, 2008.  Plaintiff has failed to make any allegations of intentional discrimination occurring on or after January 3, 2008.  Therefore, Plaintiff's § 1981 claim is barred by the statute of limitations.

C.    Plaintiff's Title VI Claim is Barred by the Statute of Limitations

Title VI of the Civil Rights Act of 1964 provides:

> No person in the United States shall, on the
> ground of race, color, or national origin, be
> excluded from participation in, be denied the
> benefits, of, or be subjected to discrimination
> under any program or activity receiving Federal
> financial assistance.

42 U.S.C. §2000d.  A plaintiff suing under Title VI must be the intended

beneficiary of the federal aid.  See Maloney v. Washington, 584 F. Supp.

1263, 1266 (N.D. Ill. 1984).

Title VI does not contain a statute of limitations.  Title VI was

enacted before December 1, 1990 and, therefore, the four-year statute of

limitations contained in § 1658 does not apply.  Moreover, the

appropriate statute of limitations for a Title VI claim in the Seventh

Circuit is not clear.  See C.S. v. Couch, 843 F. Supp. 2d 894, 906 n. 15

(N.D. Ind. 2011) (noting the uncertainty regarding the statute of

limitations in Title VI cases but finding "the Court does not have to

decide this question today").

The confusion in the Seventh Circuit regarding the appropriate

statute of limitations in Title VI cases stems from the 1977 decision in

Beard v. Robinson, 563 F.2d 331 (7th Cir. 1977).  In Beard, which was a

§ 1981 and Bivens[3] action case, the Seventh Circuit held that the Illinois

five-year general statute of limitations applied "to statutory claims

brought under the Civil Rights Act."  Beard, 563 F.2d at 338.

Thereafter, the five-year statute of limitations was also applied to § 1983

cases filed in Illinois.  See, e.g., Lawson v. Metropolitan Sanitary Dist. of

Greater Chicago, 102 F.R.D. 783, 794 (D.C. Ill. 1983) (applying five-

year statute of limitations to § 1983 cases), citing Beard, 563 F.2d 331.

However, as noted above, the United States Supreme Court

thereafter held that, in § 1983 and § 1981 actions, the most analogous

statute of limitations was the state's personal injury statute of limitations.

See Wilson,  471 U.S. at 280 (§ 1983 cases); Goodman, 42  U.S. at 661

(§ 1981 cases).

Since Wilson and Goodman, the Seventh Circuit has held that the

---

[3] Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,
403 U.S. 388 (1971) (recognizing an implied cause of action for damages against
federal officials for Fourth Amendment violation).

appropriate statute of limitations in § 1983 and § 1981 cases is the

forum state's personal injury statute of limitations.  See, e.g. Kalimara v.

Illinois Dept. of Corrections, 879 F.2d 276, 277 (7th Cir. 1989) (§

1983); Smith v. City of Chicago Heights, 951 F.2d 834, 837 n. 1 (§ 1983

and § 1981).  Moreover, the Seventh Circuit has since held that Bivens

actions, "like actions under § 1983, are considered as personal injury

claims and are governed by the personal injury statute of limitations . . .

in the state where the alleged injury occurred."  Delgado-Brunet v. Clark,

93 F.3d 339, 342 (7th Cir. 1996).  Certainly, these later cases call into

question the continued viability of the statement in Beard that Civil

Rights Act claims are governed by the Illinois five-year statute of

limitations.  See also Sanders v. Venture Stores, Inc., 56 F. 3d 771, 775

n. 2 (7th Cir. 1995) (noting "that federal civil rights actions are governed

by the personal injury statute of limitations in the state where the alleged

in injury occurred").

 In fact, this Court has not found a single case in which the Seventh

Circuit has *specifically* indicated what the statute of limitations is for a

Title VI action, as opposed to the general statement in <u>Beard</u> that claims

under the Civil Rights Acts are governed by the general statute of

limitations provision.  <u>See</u> <u>Allen v. Board of Governors of State Colleges</u>

<u>and Universities</u>, 78 F.3d 586 (7th Cir. 1996) (unpublished disposition)

(noting that the parties contested the district court's application of a five-

year statute of limitations on the Title VI claim but stating "we need not

decide this issue, since we hold on the merits that summary judgment for

defendants was proper").  Several district courts in Illinois have

continued to apply the Illinois five-year general statute of limitations to

Title VI cases.  <u>See</u> <u>Allen v. Board of Governors of State Colleges and</u>

<u>Universities</u>, 1993 WL 69674, at *2 (N.D. Ill. 1993); <u>Brewer v. Board of</u>

<u>Trustees of the University of Illinois</u>, 407 F. Supp. 2d 946, 961 (C.D. Ill.

2005) (relying on <u>Allen</u>); <u>see</u> <u>also</u> <u>Lewis v. Russe</u>, 713 F. Supp. 1227,

1232 (N.D. Ill. 1989) (applying five-year statute of limitations in <u>Beard</u>

to Title VI claim).

　　　　Nonetheless, this Court finds that the appropriate statute of

limitations in Title VI cases is the same statute of limitations that is

applied in § 1983 cases and in § 1981 cases that are not governed by the

four-year statute of limitations in § 1658 – the forum state's personal

injury statute of limitations.  Every circuit to have addressed this issue

has so found.  See Morse v. University of Vermont, 973 F.2d 122, 126

(2d Cir. 1992) (in a § 504 Rehabilitation Act case, the Second Circuit

noted the federal trend in Title VI of the Civil Rights Act, on which §

504 was modeled, was to "look to the statute of limitations used in

analogous federal discrimination actions such as those brought under" §

1983 and § 1981); Carter v. University of Connecticut, 264 Fed. Appx

111, 112 (2nd Cir. 2008) (noting that the parties did not dispute that

the Title VI statute of limitations is the state's personal injury statute of

limitations); Thomas v. Care Plus of New Jersey, Inc., ___ Fed. Appx. ___,

2012 WL 2054917, at *1 (3rd Cir. 2012) (per curiam) ("Claims brought

under Title VI are subject to the same limitations period as claims

brought under 42 U.S.C. § 1983"); Jersey Heights Neighborhood Ass'n v.

Glendening, 174 F.3d 180, 187 (4th Cir. 1999) ("the personal nature of

the right against discrimination justifies applying the state personal injury

limitations period to Title VI claims"); <u>Frazier v. Garrison I.S.D.</u>, 980 F.2d 1514, 1521 (5th Cir. 1993) (affirming the district court's finding that the same statute of limitations applied to Title VI cases as applied to § 1983 cases); <u>Lillard v. Shelby Cnty. Bd. of Educ.</u>, 76 F.3d 716, 729 (6th Cir. 1996) (in Title IX case, the court noted by analogy that in Title VI cases, courts have applied the state personal injury statute of limitations);[4] <u>Egerdahl v. Hibbing Cmty. Coll.</u>, 72 F.3d 615, 618 (8th Cir. 1995) (applying the reasoning in <u>Wilson v. Garcia</u>, 471 U.S. 261 (§ 1983 statute of limitations), to a Title VI claim and holding that the appropriate statute of limitations for a Title VI claim is the state's personal injury statute of limitations); <u>Taylor v. Regents of Univ. of Cal.</u>, 993 F.2d 710, 712 (9th Cir. 1993) (per curiam) (holding that claims brought under Title VI "are governed by the same state limitations period

---

[4] <u>But</u> <u>see</u> <u>Wade v. Knoxville Utlities Bd.</u>, 259 F.3d 452, 460 (6th Cir. 2011) (noting that the applicable statute of limitations for a Title VI was the Tennessee statute of limitations for civil actions brought under federal civil rights statutes), citing Tenn. Code Ann. § 28-3-104(a)(3) (providing one-year statute of limitations for "Civil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes"); <u>see also</u> Tenn. Code Ann. § 28-3-104 (a)(1) (providing one year statute of limitations for "Actions for libel, for injuries to the person, false imprisonment, malicious prosecution, breach of marriage promise").

applicable to claims brought under § 1983"); <u>Baker for Bd. of Regents of State of Kan.</u>, 991 F.2d 628, 631 (10th Cir. 1993) (holding that "Title VI claims are best characterized as actions for injury to personal rights" and, therefore, the appropriate statute of limitations is the state's personal injury statute of limitations); <u>Rozar v. Mullis</u>, 85 F.3d 556, 561 (11th Cir. 1996) (holding that the state's personal injury statute of limitations applied to Title VI claim).

Although the First Circuit has not yet decided the issue, district courts in that Circuit have also held that the state's personal injury statute of limitations applies to Title VI claims.  <u>Govan v. Trustees of Boston Univ.</u>, 66 F. Supp. 2d 74, 80 (D. Mass. 1999); <u>Nelson v. University of Maine System</u>, 914 F. Supp. 643, 649 (D. Me. 1996).

The Court finds these cases persuasive.  Because Title VI is closely analogous to § 1983 and § 1981, both of which have been characterized as personal-injury statutes, the same statute of limitations should apply to Title VI claims.  <u>See</u> <u>Egerdahl</u>, 72 F.3d at 618 (noting that "a plaintiff suing a federally-supported program for racial discrimination may bring a

claim under" Title VI, § 1983 and § 1981; therefore, Title VI claims should be governed by the same statute of limitations).  Therefore, Plaintiff's Title VI claim is governed by the two-year statute of limitations that governs personal-injury actions in Illinois.

As noted above regarding Plaintiff's § 1983 claim, Plaintiff filed suit on January 3, 2012.  Plaintiff has not identified any conduct by the City of Springfield that occurred on or after January 3, 2010 (two years prior to the date of filing) that allegedly violated Title VI.  Plaintiff generally complains about his treatment in the OPED program, but he completed that program in September 2009, as evidenced by the letter reflecting that the loan was forgiven.  The alleged mistake regarding Plaintiff's property taxes occurred in 2005 through 2007, when the money was refunded.  Plaintiff lost his job in 2004.  The alleged mistake regarding the $55,000 lien occurred in 2003 and 2004.  Therefore, this Court finds that Plaintiff's Title VI claim is barred by the statute of limitations.

D.   <u>Plaintiff's State Law Tortious Interference Claim is Also Barred by the Statute of Limitations</u>

At the August 2012 hearing, this Court found Plaintiff had stated a

claim for tortious interference with employment, which is also called

tortious interference with a prospective business expectancy.  See Atanus

v. American Airlines, Inc., 403 Ill. App. 3d 549, 554 (2010) ("As an at-

will employee, plaintiff must plead tortious interference with a

prospective business expectancy, rather than tortious interference with

contractual relations").  Generally, the statute of limitations for a tortious

inference claim in Illinois is five years.  735 ILCS 5/13-205 (five year

statute of limitations for cause of action not otherwise provided for); MB

Financial Bank, N.A. v. Walker, 741 F. Supp. 2d 912, 920 (N.D. Ill.

2010).  However, the statute of limitations for a state law tort claim

against a local entity or any of its employees is one year.  745 ILCS 10/8-

101(a) (Local Government and Governmental Employees Tort Immunity

Act); Evans v. City of Chicago, 434 F.3d 916, 934 (2006) (noting that

Illinois' statute of limitations on tort claims against governmental entities

and their employees is one year).  Plaintiff's state law claim is brought

against the City of Springfield, which is a local government.

    In this case, Plaintiff alleged that Jannessee of OPED harassed

Plaintiff's employer and caused Plaintiff's termination in December 2004.  A tortious interference with prospective business expectancy accrues when the prospective advantage is interfered with."  <u>Hi-Lite Products Co. v. American Home Products Corp.</u>, 11 F.3d 1402, 1410 (7th Cir. 1993).  Therefore, Plaintiff's cause of action accrued, at the latest, in December 2004 when Plaintiff was terminated from his employment.  Because Plaintiff did not file suit until January 2012, the tortious inference claim is barred by the statute of limitations.

## IV.  CONCLUSION

For the reasons stated, Defendant City of Springfield's Motion to Dismiss Complaint (d/e 42) is GRANTED.  Plaintiff's claims against the City of Springfield are DISMISSED WITH PREJUDICE.

ENTER: November 9, 2012

FOR THE COURT:

<u>      s/Sue E. Myerscough      </u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE